UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| _____ ) | |
| ) | |
| ARRAY TECHNOLOGIES INC.                    ) | |
| ) | |
| *Plaintiff,*    ) | |
| ) | |
| v.    ) | Court No. 20-01078 |
| ) | |
| UNITED STATES OF AMERICA; OFFICE OF THE ) | |
| UNITED STATES TRADE REPRESENTATIVE;    ) | |
| ROBERT E. LIGHTHIZER, U.S. TRADE    ) | |
| REPRESENTATIVE; U.S. CUSTOMS & BORDER ) | |
| PROTECTION; MARK A. MORGAN, U.S. CUSTOMS ) | |
| & BORDER PROTECTION ACTING COMMISSIONER ) | |
| ) | |
| *Defendants.*    ) | |
| ) | |
| _____ ) | |

## COMPLAINT

Plaintiff Array Technologies Inc. (hereinafter "Plaintiff"), by and through their

attorneys, allege and state a cause of action as follows:

1.      This Complaint concerns the imposition of tariffs pursuant to Section 301

("Section 301") of the Trade Act of 1974 ("Trade Act") (19 U.S.C. § 2411) on two groups of

imports from the People's Republic of China, commonly referred to as "List 3" and "List

4A." *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices

Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974

(Sept. 21, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and

Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed.

Reg. 43,304 (Aug. 20, 2019).

2.      After concluding that China's unfair intellectual property policies and

practices burdened U.S. commerce –finding that required or pressured technology transfer significantly undermines the value of American technology, thereby distorting markets and compromising U.S. companies' global competitiveness– pursuant to Section 301, the Office of the United States Trade Representative ("USTR"), was required by Section 304 ("Section 304") of the Trade Act (19 U.S.C. § 2414) to determine what action to take, if any, within 12 months after initiation of that investigation.

3.        Within that 12-month period, USTR imposed additional duties on two lists of products, List 1 and List 2, which are not subject to this case, *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018); *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018). BUT USTR also issued List 3 and List 4A tariffs within that timeframe.  Section 307 ("Section 307") of the Trade Act (19 U.S.C. § 2417) does permit USTR to "modify" the duties imposed in order to achieve the goals of a Section 301 investigation, but that statutory authority is not a viable basis for USTR to defend its issuance of Lists 3 and 4A.  While Lists 1 and 2 were issued in order to address the unfair intellectual property policies and practices originally investigated under Section 301, Lists 3 and 4A were issued in response to China's retaliatory tariffs, and for other unrelated reasons.  Finally, even if USTR deems existing tariffs "no longer appropriate," as it also did here, the Trade Act permits USTR only to delay, taper, or terminate, not expand, the actions it has already taken.

4.        The arbitrary manner in which the Defendants implemented the Lists 3 and 4A

tariff actions violates the Administrative Procedure Act ("APA").  USTR (1) failed to provide sufficient opportunity for comment on its promulgation of List 3, *e.g.*, requiring interested parties to submit affirmative and rebuttal comments on the same day; (2) failed to consider relevant factors when making its decision to implement Lists 3 and 4, *e.g.*, undertaking no analysis of the supposed "increased burden" imposed on U.S. commerce from the unfair policies and practices that it originally investigated; and (3) failed to connect the record facts to the choices it made.  USTR failed to explain how its decisions were shaped by the over 6,000 comments submitted for List 3 and the over 3,000 comments submitted for List 4.  Accordingly, USTR's decision-making did not satisfy the standards set out by the APA.

5.     The manner in which the Defendants implemented Lists 3 and 4A also violated the 5th Amendment Due Process Clause under the Constitution of the United States.  The Due Process Clause states that "No person shall… be deprived of life, liberty, or property, without due process of law."  USTR denied Plaintiffs' Due Process when USTR (1) failed to provide sufficient opportunity for comment in its promulgation of List 3, *e.g.*, by requiring interested parties to submit affirmative *and* rebuttal comments *on the same day*; (2) failed to consider relevant factors when making its decision in the implementation of Lists 3 and 4, *e.g.*, by undertaking no analysis of the supposed "increased burden" imposed on U.S. commerce from the unfair policies and practices that it originally investigated; and (3) failed to connect the record facts to the choices it made in its promulgation of Lists 3 and 4.

6.     The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund (with interest) any tariffs paid by Plaintiffs pursuant to Lists 3 and 4A.

**JURISDICTION**

7.     The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, tariffs, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B).

## PARTIES

8.     Plaintiffs are United States importers of merchandise that has been and/or will be subject to the additional *ad valorem* tariffs under List 3 and/or List 4A.

9.     Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

10.    The Office of the USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, pursuant to the direction of the President.  USTR conducted the Section 301 investigation at issue and made numerous decisions regarding Lists 3 and 4.

11.    Ambassador Robert Lighthizer currently holds the position of USTR and serves as the director of the Office of the USTR.  In these capacities, he made numerous decisions regarding Lists 3 and 4.

12.    Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects tariffs on imports.  CBP collected payments made by Plaintiffs to account for the tariffs imposed by USTR under Lists 3 and 4.

13.    Defendant Mark A. Morgan is the Acting Commissioner of CBP.  In this

capacity, he oversees CBP's collection of tariffs paid by Plaintiffs under Lists 3 and 4.

## STANDING

14.     Plaintiffs have standing because they are "adversely affected or aggrieved by agency action" within the meaning of the APA, 5 U.S.C. § 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5.").  Tariffs imposed by Defendants pursuant to Lists 3 and 4A adversely affected and aggrieved Plaintiffs because they were required to pay these tariffs.

## TIMELINESS OF THE ACTION

15.     A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

16.     The instant action contests action taken by Defendants that resulted in the publication of List 3 and List 4A.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 43,304 (Aug. 20, 2019).  Plaintiffs' claims accrued as early as September 21, 2018, when USTR published notice of List 3 in the *Federal Register*. *Id.*  Plaintiffs have therefore timely filed this action.

## RELEVANT LAW

17.     Section 301 authorizes USTR to investigate a foreign country's trade practices. 19 U.S.C. § 2411(b).  If the investigation reveals an "unreasonable or

discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice. *Id*. § 2411(b), (c)(1)(B).

18.    Section 304 requires USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation. *Id.* § 2414(a)(1)(B), (2)(B).

19.    Section 307 (in pertinent part) allows USTR to "modify or terminate" an action taken pursuant to Section 301 either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate." *Id.* § 2417(a)(1)(B), (C).

## PROCEDURAL HISTORY

## INVESTIGATIONS

20.    On August 14, 2017, the President directed Ambassador Lighthizer to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017).

21.    On August 18, 2017, USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments:  China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

22.    On March 22, 2018, USTR released the report announcing the results of such investigation.  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings*

*of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), *available at* https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF.  USTR found that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id.* at 17.  USTR based its findings on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id.* at 45; (2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies on terms that favor Chinese recipients, *id.* at 48; (3) China's facilitation of systematic investment in, and acquisition of U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for the purposes of lar-scale technology transfer, *id.* at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id.* at 171.  In the report, USTR did not quantify the burden or restriction imposed on U.S. commerce by the investigated practices.

23.     At that time, USTR also published a "Fact Sheet" stating that "[a]n interagency team of subject matter experts and economists estimate that China's policies result in harm to the U.S. economy of at least $50 billion per year."  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about- us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet.  USTR then indicated that, consistent with a directive from the President, it would "propose additional tariffs" of 25% *ad valorem* "on

certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies." *Id.*; *see Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

## LIST 1 & LIST 2

24.    On April 6, 2018, USTR published notice of its intent to impose additional tariffs of 25% on products of Chinese origin. *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018). The proposed list covered 1,333 tariff subheadings totaling a value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id.* at 14,907. USTR described that it arrived at this number because that was the amount "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

25.    On June 20, 2018, USTR published notice of the final list of products subject to an additional tariff of 25% *ad valorem*, known as "List 1." *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property,*

*and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018).  USTR explained that it "narrow[ed] the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion."  *Id.* at 28,711.

26.     Concurrently, USTR announced its intent to impose a 25% *ad valorem* duty on a second proposed list of Chinese products in order to "maintain the effectiveness of [the] $50 billion trade action" grounded in its Section 301 investigation.  *Id.* at 28,712.  USTR announced the proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion."  *Id.* at 28,711-12.

27.     On August 16, 2018, USTR published notice of the List 2 products subject to an additional tariff of 25% *ad valorem,* comprising "279 tariff subheadings" whose "annual trade value . . . remains approximately $16 billion."  *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823-24 (Aug. 16, 2018).

28.     Following the President's directive to consider imposing tariffs on $50 billion in Chinese products, China threatened to impose retaliatory tariffs on the same value of imports from the United States.  In response, the President "instructed the USTR to consider whether $100 billion of additional tariffs would be appropriate under Section 301" due to "China's unfair retaliation."  THE WHITE HOUSE, *Statement from Donald J. Trump on Additional Proposed Section 301 Remedies* (Apr. 5, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-donald-j-trump-additional-proposed-section-301-remedies/.

29.     On June 18, 2018, the President formally directed USTR to consider whether the United States should impose additional tariffs on products from China with an estimated

trade value of $200 billion—despite USTR having not yet implemented List 1 and List 2. The President recognized that his decision was motivated by China's threatened retaliatory "tariffs on $50 billion worth of United States exports".  THE WHITE HOUSE, *Statement from the President Regarding Trade with China* (June 18, 2018), *available at* https://www.whitehouse.gov/briefings-statements/statement-president-regarding-trade-china-2/.  USTR stated that it would design the newly proposed tariffs to address China's threatened retaliatory measures, rather than any of the harms identified in its Section 301 investigation, thus acknowledging the President's directive.  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0.

## LIST 3 & LIST 4A

30.     China imposed 25% *ad valorem* tariffs on $50 billion in U.S. goods, implemented in two stages of $34 billion and $16 billion, at the same time that the United States began collecting its own 25% tariffs under List 1 (July 6, 2018) and List 2 (August 23, 2018).  Following this response, USTR published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent *ad valorem* duty on [a list of] products [from] China with an annual trade value of approximately $200 billion."  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,608 (July 17, 2018). USTR invoked Section 307(a)(1)(C) of the Trade Act, pursuant to which USTR "may modify

or terminate any action, subject to the specific direction, if any, of the President with respect to such action, . . . if . . . such action is being taken under [Section 301(b)] of this title and is no longer appropriate." *Id.* at 33,609 (citing 19 U.S.C. § 2417(a)(1)(c)).  USTR initially set a deadline of August 17, 2018 for initial comments; August 20-23, 2018 for a public hearing; and August 30, 2018 for rebuttal comments. *Id.* at 33,608.

31.     USTR confirmed in its notice that China's decision to impose "retaliatory tariffs" was its primary basis for its proposed action. *Id*. at 33,609 (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices").  USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory tariffs imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id.*; *see also id.* (Because "China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports.").  USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated and only pointed to China's retaliatory measures. *See id.*

32.     USTR's contemporaneous press statements corroborated the contents of its notice: China's retaliatory tariffs motivated its proposed action.  Ambassador Lighthizer stated that the proposed action came "[a]s a result of China's retaliation and failure to change its practice."  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018),

*available at* https://ustr.gov/about- us/policy-offices/press-office/press-

releases/2018/july/statement-us-trade-representative.

33.     On August 1, 2018, Ambassador Lighthizer announced that, in light of China's

retaliatory tariffs, USTR would propose to increase the additional duty from 10% to 25% *ad*

*valorem*.  Rather than addressing the practices that USTR investigated pursuant to Section

301 of the Trade Act, he stated that China "[r]egrettably . . . has illegally retaliated against U.S.

workers, farmers, ranchers and businesses."  OFFICE OF THE UNITED STATES TRADE

REPRESENTATIVE, *Statement by U.S. Trade Representative Robert Lighthizer on Section*

*301 Action* (Aug. 1, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-

office/press-releases/2018/august/statement-us-trade-representative.

34.     USTR, formally proposed "raising the level of the additional tariff in the

proposed supplemental action from 10 percent to 25 percent."  *Extension of Public Comment*

*Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts,*

*Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*,

83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018).  USTR also set new dates for a public hearing

over six days ending on August 27, 2018.  *See id.*; *see also* OFFICE OF THE UNITED

STATES TRADE REPRESENTATIVE, *Public Hearings on Proposed Section 301 Tariff List*

*(Aug. 17, 2018) (modifying hearing schedule), available at https://ustr.gov/about-us/policy-*

*offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.*

35.     At that time, USTR adjusted the deadlines for the submission of written

comments, setting September 6, 2018—less than a month later—as the new deadline for both

*initial and rebuttal* comments from the public. 83 Fed. Reg. at 38,761.  That adjustment,

deviating from USTR's past practices, prevented both USTR and the public from considering

initial comments at the hearing, and left insufficient time for interested parties to review and respond to the initial comments filed by other parties.  USTR also limited each hearing participant to five minutes. Docket No. USTR-2018-0026, https://beta.regulations.gov/document/USTR-2018-0026-0001.  Despite those obstacles, approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments.  *Id.*

36.     Only eleven days after receiving final comments from the public, the President announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China."  THE WHITE HOUSE, *Statement from the President* (Sep. 17, 2018) https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/.  Once again, the President made clear that China's response to the $50 billion tariff action (i.e., List 1 and List 2 tariffs) motivated that decision, and he immediately promised to proceed with "phase three" of the plan—an *additional $267 billion tariff action*— "if China takes retaliatory action against our farmers or other industries."  *Id.*

37.     On September 21, 2018, USTR published notice of the final list of products subject to an additional tariff, known as "List 3."  83 Fed. Reg. at 47,974.  USTR imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019.  *Id.*  USTR determined that the List 3 tariffs would apply to all listed products that enter the United States from China on or after September 24, 2018.  *Id.*   USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses.  *Id.*

38.     As legal support for its action, USTR for the first time cited Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any

action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." *Id.* (brackets omitted).  USTR stated that the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP policies, referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies."  *Id.*  USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded the current action by choosing to cause further harm to the U.S. economy, by increasing tariffs on U.S. exports to China." *Id.* at 47,975.

39.     Trade negotiations by USTR with its Chinese counterparts in an attempt to resolve differences between the two countries resulted in a delay in the schedule to increase the List 3 tariff rate from 10 to 25%.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

40.     These negotiations failed and in May 2019, USTR announced its intent to raise the tariff rate on List 3 goods to 25%, effective either May 10, 2019 or June 1, 2019, depending on the date of export.  *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019) ("*List 3 Rate Increase Notice*"); *see also*
*Implementing Modification to Section 301 Action: China's Acts, Policies, and Practices*
*Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 21,892
(May 15, 2019).  The notice cited China's decision to "retreat from specific commitments
agreed to in earlier rounds" of negotiations as the basis for the increase in the tariff rate.  *List*
*3 Rate Increase Notice*, 84 Fed. Reg. at 20,459.  In contrast with past imposition of new
tariffs, USTR did not seek public comment but rather simply announced that the increase
would occur. *Id.*

41.     In June 2019, USTR invited the public to seek exclusions from List 3 tariffs on
a product-specific basis.  *Procedures for Requests to Exclude Particular Products From the*
*September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices*
*Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576
(June 24, 2019).

42.     The tariffs imposed on products covered by List 3 remain in effect as of the
date of this Complaint, with the exception of the limited number of products for which USTR
extended its originally granted exclusions from the List 3 tariffs.  *See, e.g.*, *Notice of Product*
*Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer,*
*Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020).  Plaintiffs may
have already taken action in requesting the refund of tariffs paid on certain entries of granted
exclusions from the List 3 tariffs through actions, including but not limited to Prior
Disclosure Offset, Protest, Post Summary Correction, or drawback filed with CBP.  Plaintiffs
in no way seek to request a double refund on such entries or tariffs already refunded by these
or any other means.

43.     Only one week after publishing a notice of the decision to increase the tariff rate on merchandise in List 3, USTR declared its intent to proceed with another list—List 4— covering more products subject to additional tariffs.  Under USTR's proposal, List 4 would impose additional tariffs of 25% *ad valorem* on products worth $300 billion.  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564, (May 17, 2019).  USTR explained that its decision was motivated by China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce." *Id.*

44.     USTR again invited the public to comment on the proposed List 4 and participate in a hearing.  *Id.*  The public submitted nearly 3,000 comments, but despite the opportunity to comment, the timeline for participation in the hearing left little room for meaningful input.  USTR required witnesses to submit drafts of their testimony by June 10, 2019, only about one week before the deadline for fully developed written comments, and again limited witnesses to five minutes of testimony at the hearing.  *Id.*

45.     On August 20, 2019 USTR issued a final notice adopting List 4 in two tranches. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019).  List 4A would impose a 10% *ad valorem* duty on goods worth roughly $120 billion, effective September 1, 2019.  *Id.* at 43,304.  List 4B would impose a 10% *ad valorem* duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019.  *Id.* at 43,305.  Once again, USTR did not address any of the nearly 3,000 comments submitted or any of the

testimony provided by witnesses, other than to claim that its determination "takes account of the public comments and the testimony." *Id.*

46.       As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, stating that it may modify its prior action taken pursuant to Section 301 of the Trade Act if (1) "[t]he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate." *Id.* at 43,304.  However, instead of finding any increased burden on U.S. commerce from the practices that were the subject of USTR's investigation, USTR simply pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency.  *Id.*

47.       On August 30, 2019, only ten days later, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019).   USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." *Id.* at 45,822.  USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action.  *Id.*

48.       On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR announced that it would "suspend indefinitely the imposition of additional tariffs of 15 percent on products of China covered by" List 4B.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to*

*Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447

(Dec. 18, 2019).  USTR also announced that it would reduce the tariff rate applicable to

products covered by List 4A, *id.*, an action that ultimately became effective on February 14,

2020, when the applicable tariff rate was lowered to 7.5%, *Notice of Modification of Section*

*301 Action: China's Acts, Policies, and Practices Related to Technology Transfer,*

*Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

49.      List 4A tariffs remain in effect as of the date of this Complaint.  The proposed

tariffs on products covered by List 4B remain suspended.

50.      On September 16, 2020, a dispute settlement panel of the World Trade

Organization ("WTO") ruled that the Section 301 tariffs imposed by the United States on

imports from China are inconsistent with the United States obligations under the General

Agreement on Tariffs and Trade ("GATT").

## STATEMENT OF CLAIMS

## COUNT ONE

51.      Plaintiffs herein incorporate by reference paragraphs 1 through 50, supra, of

this complaint.

52.      The Declaratory Judgment Act authorizes any court of the United States to

"declare the rights and other legal relations of any interested party seeking such declaration,

whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

53.      The Trade Act does not authorize the actions taken by Defendants that resulted

in List 3 and List 4A tariffs.

54.      Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it

determines that "an act, policy, or practice of a foreign country is unreasonable or

discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b). USTR failed to predicate its actions giving rise to List 3 and List 4A on any such determination.

55. If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B). USTR's action giving rise to List 3 and List 4A occurred in September 2018 and August 2019 respectively, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

56. Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B). Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act.

57. Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C). Section 307 of the Trade Act does not authorize Defendants to *increase* tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

58. Plaintiffs are therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 and List 4A are *ultra vires* and contrary to law.

**COUNT TWO**

59.     Paragraphs 1 through 58 are herein incorporated by reference.

60.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

61.     Defendants exceeded their authority under the Trade Act in promulgating Lists 3 and 4A and therefore acted "not in accordance with the law" and "in excess of statutory authority" for the reasons set forth in Count One.

62.     Defendants failed to offer any evidence for any asserted "increased burden" from China's intellectual property policies and practices that were the subject of USTR's Section 301 investigation.

63.     Defendants also promulgated List 3 and 4A in an arbitrary and capricious manner when they failed to provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors in making their decisions, and failed to adequately explain their rationale.  Defendants' predetermined decision-making resulted in the unlawful imposition of tariffs on imports covered by Lists 3 and 4A whose value equals $500 billion.

### COUNT THREE

64.     Paragraphs 1 through 63 are herein incorporated by reference.

65.     The Due Process Clause under the 5th Amendment to the U.S. Constitution provides that "No person shall… be deprived of life, liberty, or property, without due process of law."

66.     Defendants promulgated List 3 and 4A in violation of the Due Process Clause when they failed to provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors in making their decisions, and failed to adequately explain their rationale.  Defendants' predetermined decision-making resulted in the unlawful imposition of tariffs on imports covered by Lists 3 and 4A whose value equals $500 billion.

### COUNT FOUR

67.     Paragraphs 1 through 66 are herein incorporated by reference.

68.     Article XX(a) of the GATT allows a member to "adopt or enforce" measures, "necessary to protect public morals," subject to the requirement that "such measures are not applied in a manner which would constitute a means of arbitrary or unjustifiable discrimination between countries where the same conditions prevail, or a disguised restriction on international trade."

69.     The "Charming Betsy" canon – the judicial presumption that an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains – counsels against interpreting federal statutes to contravene international law.  *Murray v. The Schooner Charming Betsy*, 6 U.S. 64 (1804).

70.     Defendants promulgated List 3 and 4A in violation of Articles I:1 and II:1(a) and (b) of the GATT 1994 and the Charming Betsy canon when they imposed tariffs on imports covered by Lists 3 and 4A in excess of those provided in the U.S. Schedule of Concessions and Commitments (as annexed to the GATT 1994).  The tariffs are not justified by any of the exceptions set forth in the GATT 1994, including GATT Article XX(a).

### PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court

(1)     declare that Defendants' actions resulting in tariffs on products covered by Lists 3 and 4A are unauthorized by, and contrary to, the Trade Act;

(2)     declare that Defendants arbitrarily and unlawfully promulgated Lists 3 and 4A in violation of the APA;

(3)     declare that Defendants promulgated List 3 and 4A in violation of the Due Process Clause under the 5th Amendment to the U.S. Constitution;

(4)     vacate the Lists and 4A rulemaking;

(5)     order Defendants to refund, with interest, any tariffs paid by Plaintiffs pursuant to Lists 3 and/or 4A;

(6)     permanently enjoin Defendants from applying Lists 3 and 4A against Plaintiffs and collecting any tariffs from Plaintiffs pursuant to Lists 3 and/or 4A;

(7)     award Plaintiffs their costs and reasonable attorney fees; and

(8)     grant such other and further relief as may be just and proper.

Respectfully submitted,


/s/ Gregory S. McCue
Eric Emerson
Thomas J. Trendl
Gregory S. McCue

September 18, 2020

STEPTOE & JOHNSON, LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: (202) 429-6421

*Counsel to Array Technologies Inc.*